Good morning, your honors. May it please the court. My name is Lisa Kerr. I represent the plaintiff. I also am the plaintiff. For that reason, apparently primarily for that reason, the district court treated plaintiff's civil complaint against Marshall University and its personnel as though it were a habeas petition under a total management order that purported to authorize factual findings at the 12b6 stage. Because it applied an erroneous standard, but also because of defendants improper litigation tactics, the district court dismissed with prejudice a well-plaid civil complaint against Marshall State University and six of its employees. Applying not the civil standard that applies on 12b6 that looks at the allegations of the complaint, takes them as true, and applies every presumption in their favor, but applying an opposite post-conviction standard that presumes the state has proved its case against the petitioner and adopts that story unless it is proven false, the district court based its rulings not on what was in plaintiff's complaint, but on a different factual story. Unpled, unsworn, presented in defendants 12b6 moving papers with no basis for that testimony other than two things. One, as I said, the unpled, unsworn testimony of counsel, which is essentially amounted to their own testimony, and counsel's reliance on the very document, the very central defamatory document that plaintiff alleged was false and defamatory. Defendants in their 12b6 moving papers raised factual disputes with the plaintiff's complaint by adopting openly, publicly, the defamatory assertions from a document that they themselves had filed under seal. The court then moved on, again because of this management order which was reversing the normal presumption that's applied in favor of the plaintiff's complaint. The court moved on to adopt defendants' counter story, their counter narrative to the complaint, as honest and truthful. And the defendants, in fact, defendants' counsel in their papers stated that the defamatory statements that were alleged as false in the complaint were in fact honest and truthful. And the court without any evidence, without any testimony, without any discovery, without any litigation, accepted those statements as honest and truthful and relied on them to dismiss the plaintiff's complaint. Plaintiff is a private figure. She does not seek media attention. She has never sought media attention. After long illness and death of her life partner, Gloria, and her parents shortly after, plaintiff was moved to develop her legal practice into a path of public service towards young people struggling with parental abuse or neglect. Part of that path was obtaining a West Virginia teaching certificate for which Marshall seemingly offered a well-suited program. West Virginia's code and regulations provide state institutions, Marshall included, with the authority to issue the West Virginia teaching credential allowing a person to teach in West Virginia's public schools. Plaintiff enrolled in and completed, for that purpose, Marshall's Master of Arts in Teaching program, which is advertised by Marshall as a path to a teaching credential for older professionals. As outlined in the complaint, until Marshall's education department faculty learned of plaintiff's homosexual orientation, plaintiff had unanimously outstanding classroom performance reviews and unanimously outstanding academic grades. Not the slightest doubt, not the slightest question had ever been raised about plaintiff's qualifications to teach and to succeed in the program. However, after learning of plaintiff's homosexual orientation, Marshall completely changed its conduct. Marshall began by withdrawing academic support from plaintiff. Plaintiff recognizes that in hindsight because it's very hard to tell when somebody is not participating and not interacting with you whether they're a student or not. As the final semester of her program drew on, plaintiff began to recognize that the people who were supposed to be certifying her were pulling away from her and not providing her with support. Again, this began, it was a complete change in Marshall's conduct and it began after she herself informed her teaching supervisor that she had a homosexual orientation in order to obtain support if there were any complaints from teaching, from people that she taught with or any problems, any problems with bigotry. So plaintiff is then going through the program. She is receiving no complaints. She's being supervised by a public school supervisor who is a defendant. She's being supervised by a Marshall supervisor who is a defendant. She is not receiving any complaints or any criticism throughout the course where she moves then to the end of the program and she is within days of receiving her teaching certificate. She is within days of receiving her Marshall degree. In fact, the degree was already in the mail when defendants engaged in what I call the ambush meeting in the papers. Plaintiff received her actual paper degree the day after that. So Marshall's ambush was literally on the heels of plaintiff already receiving her credentials and degree. Days before plaintiff had completed the program, she had nothing left to do. Two defendants pulled plaintiff into a meeting which plaintiff believed was going to be a debriefing about a complaint that she'd made about her public school supervisor. In that meeting, as all was outlined in the complaint and what I'm telling you here is in the complaint which is to be presumed true. I am not adding any additional factual context. In the complaint as it states, the plaintiff was told in that she would not graduate from Marshall, that she would not receive a teaching certificate. The person speaking to her who was the coordinator of the public school teaching program held in her hand a sheet of papers that plaintiff had never before seen prior to that meeting. Reading over the sheet of papers without even showing them to the plaintiff, she stated the allegations which since this is not a sealed hearing, I'm not going to discuss them in here, but she made the accusations, one of which involved alleged criminal conduct which was completely false. She made the allegations from that stack of papers. It was the first moment that plaintiff had ever heard these criticisms. She held that stack of papers and continued to make the accusations against plaintiff. Then she told plaintiff that plaintiff would not graduate. She would not receive a teaching certificate. Plaintiff responded by saying, isn't there a process here for this? Can this happen? Plaintiff made the assertions that were in the complaint. Is there not a process here by which you cannot simply make this determination? There was another individual in the room who said, you have an appeal. You can appeal this determination, but you cannot appeal any of the facts that are in these papers. They have already been decided against you. Still not having shown any of these documents, they said, you have one process and one process only. You will engage in an appeal that will not involve Marshall. It will not involve any public hearings. You have to agree that we will review these documents privately and behind closed doors, or we will take them to the people that you have applied for employment with, and we will show them to you. What I've just said to you is basically a synopsis of this complaint. You have to be looking at me like I'm completely crazy. That is exactly how I felt sitting in that room when that happened to me. This cannot be happening. As it says in the complaint, Marshall's procedures completely ban Marshall's employees from taking the steps that they took. That's why in the complaint there's a due process claim that Marshall did not follow its own procedures. There is a two-part equal protection violation claim. One is that plaintiff alleges that the actions that were taken against her were taken out of a bigoted motive to deprive her of her teaching certificate and her degree because of the defendant's belief that a homosexual person should not be a teacher. There's also a second part. That was the fifth claim. The second part is the sixth claim in which the plaintiff alleges that even if we pretend that the defendants did not know of plaintiff's homosexual orientation, which it's going to be shown, even if we pretend that the defendants did not know of plaintiff's homosexual orientation, their actions still lacked a rational basis. We have a three-part, a trifecta of federal claims. The denial of due process, the findings without a prior notice of hearing, the denial of the school's written appeal procedure. We have the denial of equal protection based on the bigoted, which I allege is discrimination based on sex, and I'll go into. We have the denial of equal protection based on lacking a rational basis. We also have three state claims, the main one being the defamation claim, which is part and parcel of that. We have a interference with employment expectancy, and we have basically the intimidation claim, intentional infliction of emotional distress. All of these claims are pretty cut and dry. The way that they are pled are ... There's no deficiency that defendants have identified in the pleadings. Basically, what the defendants have said is that we believe in that stack of papers that all of the defamatory allegations in that stack of papers are true, and we're going to tell the court that they're true, and we're going to reiterate that they're honest and truthful. Because we assert that these accusations against the plaintiff are honest and truthful, they weren't asking for a direct verdict. Because we assert that these assertions are honest and truthful, the plaintiff should not even get an opportunity to prove that they're not. The plaintiff should be out of court. Because of the fact that the court had already gone into this management order procedure where instead of applying a normal 12B6 standard, which should have let this claim go forward, it applied a different standard. That's why the court accepted this argument. I would submit that no court is going to accept that argument without the underlying error of the management order. That's why I don't tend to criticize Judge Johnston too harshly here. I think it was probably a clerical mistake that led to the court's error. It is a serious case. It is a real case. I'm sure that the court wants to address the issues of ... How are we doing here? I'm on red. I'm sure that the court wants to address the issues of Title IX, but I've run out of my reserve time. So, Your Honors, questions? Thank you, Counsel. Mr. Ballard? May it please the Court, Honorable Judges, Counsel, my name is Andy Ballard. With me today is my partner, Andy Hess. We represent the defendant, Apollese, in this case. Just briefly as a preliminary matter, this is a highlight of my career, standing before you and making this trip down here. I think Mr. Ellis feels the same way. Regardless of the outcome, this is an amazing opportunity and I can't wait to get home and tell my children about it. With that being said, the District Court committed no error in this case when plaintiff's complaint in response to the 12B motion. The court issued a well-reasoned memorandum opinion in order which followed a very lengthy and well-reasoned proposed recommendation of the finding for Magistrate Tinsley. I think, as the court will know reading the record in this case, all those documents were different. Our memorandum was different than the reasons set forth in Magistrate Tinsley's order and then Judge Johnson's alternate memorandum opinion in order differed from both the memorandum we filed and the proposal from Magistrate Tinsley. The court concluded that the complaint was materially deficient on its face and failed to state any justiciable cause of action against the defendants. For that same reason, we asked this court to affirm the lower court's opinion. The lower court noted right at the outset of its memorandum of opinion that this case arises out of plaintiff's receipt of a no grade in a class EDF 677 at Marshall University. She received this grade as a result, and these matters are what is set forth in the complaint, why it was subject to the 12B dismissal. She received the grade as a result of voluntarily terminating her student teaching experience. What was the grade? No credit. It was a credit, no credit student teaching assignment class that was part of the requirements to obtain a Master's in Arts and Teaching degree. It's not a letter grade, A through F, it is literally on her transcript, a C or an NC for no credit, and she was issued an NC. And what was the academic evaluation process for no credit? It was set forth in the Master's of Arts and Teaching handbook. No, I mean, what was given to her? I mean, in other words, normally students get a grade, A or B, here it was a credit or no credit. Pass-fail. Pass-fail. Where was it explained to her academically she didn't get the grade for credit? It was. When and where was it? When and where? Yeah, when did they sit down with her and say, based on this criteria for this class, for this session, you did not get the credit because of X, Y, Z. When was that done? The December 5th meeting I set forth in the complaint. That was her first opportunity when she sat down with Bailey, with defendants Bailey and Eagle. If you read the. You know what she just described to us, the paper in hand telling her, the paper they didn't show her, was that correct? Correct. Yes. Yes. But what is missed from what she recited to the court and what is still in the complaint and what the district judge found to be pertinent to these matters is that she walked out of her student teaching assignment and she sent an email to Mr. Kuhn, who was her supervisory teacher at Scott High School, and to Ms. Southard, who was the student teacher supervisor, saying, I'm not coming back. And she admits this in her complaint, that she terminated her experience. She was a few weeks shy of graduating and she self-declared, Your Honor, that I have met, she said, I profess the understanding that I have met the requirements of my student teaching experience. She doesn't get to say that. None of us get to define what we do in a class. Marshall University defines. The University of Michigan College of Law, those programs define when you have met the requirements. So it wasn't as if she was entitled to an improvement plan, which had been pledged in her documents. You know, she sat there and took all kinds of issues with what Marshall did. Marshall was not required to run after her and say, please come back and finish. She sent an email and she put it in her complaint and said, I'm done and I've met my requirements. Then she asked for a meeting to discuss it, which is again in the complaint. On the 20th of November, the very next day, she was contacted and a meeting was scheduled for December 5th. We are now at the end of the semester. You've got a Thanksgiving break in the middle there. She did not file Form A. It's in the complaint. She didn't do anything. That student teacher handbook, which the district court adopted and incorporated, finding that the plaintiff relied upon it in her complaint, and the complainant didn't object to its authenticity, said there is a procedure. If you've got a problem with your supervisory teacher, there is a form to fill out and we will address it. She didn't do that. She sent an email saying, I'm finished, I'm not doing it anymore. So when she, oh I'm sorry Judge. Could she come back and undertake a student teaching assignment and get credit? She could, literally your honor. This is not a disciplinary action. She's not expelled. She received no credit grade. She could enroll next semester. She could enroll whenever there's classes offered. She could finish that one credit, non-credit course, and whatever the program requirements are at the end involving her capstone assessment, or the book says we go on and we write our paper and we make our presentation, and you're issued a degree. We have no issue. She's clearly set forth her academic standing at Marshall University in her document. And it's not only assumed true because it's in the complaint, it is true. She had a good record at Marshall. She has a good GPA at Marshall. Well the problem is Counsel, justice delayed is justice denied. What she's saying is that you basically came up with this back-filling reason, but the real reason was that of her sexual orientation. Which isn't true, your honor. And you deny this, right? Here is why. Why? And I agree with the judge's finding in this case. When you look at the allegations in her complaint versus the equal protection due process argument she's made in her complaint, first of all she does not allege discrimination or anti-sexual orientation bias against Defendant Kuhn, who was her supervisory teacher. She only alleges that in the complaint that two people, and she stood here before this court today and said the same thing, that two people had knowledge of that. And that was Defendants Bailey and Defendant Southern. After this process, when she's laid out in detail, the due process that she was given when more than what was required in this situation because it was an academic determination, she went beyond those. She had a first level argument with Defendant Eagle and Defendant Bailey. They decided to uphold the no credit grade. That's set forth in the complaint. She goes to the second level of a tri-level appeal process on this no credit grade and argues her case to Dean and Defendant Eagle and Dean and Defendant Heaton. She has made no allegation in her complaint that they knew that she, of her sexual orientation. She said here today, nothing about Eagle and Heaton. And that is what the court keyed on. You've got to plead certain specific elements in a complaint for the court to determine that there is a justiciable cause of action to proceed. Then after that level of the appeal, she goes up to the Dean of the Graduate Studies, Dr. Pittenger. No allegation in the complaint is made that Dr. Pittenger knew of her sexual preferences. All those people upheld the decision based upon what they reviewed in the case. And she sets that forth in the complaint. So when you come in and you say, you do not present an allegation against three of the people who handled level two and level three of your appeal process that there was a bias or animus or that they even knew or were aware of your sexual orientation. That claim fails. And that is the position that the court took. It wasn't presented properly in the complaint. This is not an argument of fact. This is guiding through what at times is a very specific complaint and at other times is a very, very broad and nonspecific complaint and at the end of the day makes a convoluted document. The courts did a terrific job of getting through all this and finally finding that there is no sustainable cause of action. It would have been easy, in my opinion, it would have been easy for Judge Johnston and his staff to look at this case and say, wow, there's a lot here. Let's send this out for some discovery and let them come back at the Rule 56 stage. But no, they kept it and they fought and they went through it and they came to the same conclusion for slightly different reasons that my team came to when we prepared our motion to dismiss, that Magistrate Tinsley's team came to when they issued approximately a 50-page proposed finding of recommendation and then the district court issues almost a 50-page order going through each individual claim presented and finding in favor of the defendants on this case. So that wraps up, that in a nutshell covers all of the due process and the 1983 claims. So you contend this case is solely academic evaluation? Solely. What about the allegations that she was engaged in for projects? Dishonesty? That only falls in the situation of the defamation situation. But it's incorporated into the evaluation, right, that Mr. Kuhn said about, those things said about it, does it not? Judge, and I'm going to tell you, it's a difficult position to be in because as you've seen the record in this case, we filed the Kuhn document under seal. When the Kuhn document is reviewed, it supports the decisions that have been rendered by the lower court in this case. This is 12B6 here. 12B6, and it was relied on in the complaint and when you read the Kuhn document, you find out why all those statements were made. The problem with it is, is... She didn't rely on it for purposes of truth. That was the whole base of it, that this is the lie. That was her point. That was her point. You're turning it on its head. Exactly, but when the document is reviewed, when the document is actually read, it clearly states in there that the basis for his opinions, which he was asked to give, which was a privileged communication under the state law of West Virginia because he was a supervising instructor following a format that was set by Marshall University and transmitted those statements only to people who were entitled to receive them to make a determination of whether or not the plaintiff was a candidate for teaching certification and a candidate for graduation of the school. What you see when you review that document is that all of the problems started when she got up and she walked out and she voluntarily left her class, which is what's pled in the complaint. We never got to that issue. The court never even looked at the statement. The court looked at how she defined the statement within her pleading and said, what you have said here does not rise to the level of defamation under West Virginia law. That's the part of this that matters. When you look at the other issues, business expectancy, that doesn't matter, that issue alone, your honor. Tort of outrage, intentional affliction, emotional distress, that aspect doesn't matter. The due process sexual orientation bias and the rational basis, class of one, those statements that she put in there as to what she perceives the Coon's statement to say has no bearing and the Fair Labor Standards Act, again, has nothing to do with the defamation claim. And the court found that this can't be provably false. What she has said, taking in the light most favorable to her at a 12B6 stage, we have case law on this topic. We have had almost the exact same set of facts happen in the Huff case in West Virginia and the court found that the statements in regards to a student were not provably false and that they were solely opinion and that is what the course catalog asked Mr. Coon to provide was opinion. So you're saying that basically, extension of your argument is that he could have said anything about her, anything about her. It could be as outrageous, this hypothetical, but he could have said that she committed crimes outside of this classroom, but saying that she had no rights at all is just that you make a determination before you even talk to her, you get no credit and she has no redress in federal court. That would have been provably false. If I say someone committed crimes, but I mean, you can go in and determine. Oh, you said provably false. You mean, so in other words, there'd be a trial for only merits to determine that. That would potentially survive a 12B stage. But then the 12B6 we don't deal with. It's just the four corners of the complaint. The four corners of the document and that's what the court looked at in this situation and the court said, well, we see in this complaint falls under the body of existing case law in West Virginia and does not rise to the level of defamation. That was the position we took in our brief. That was a position that Magistrate Tinsley found that was the position that Judge Johnston found. This court obviously has the power and authority to send it back and say that was wrong, but we contend that that was the proper application of law. Why was it necessary to peek at the statement at all? The statement, because the statement supported the position that Marshall was asserting and the defendants were asserting in his 12B6. When you look at that opinion, you clearly find that what is being said by Mr. Coon, which by the way, your honors, it was alluded to, it has been alluded to. But don't we have to assume that everything he said is false? Excuse me, your honor? Don't we have to assume that everything he said was false? No. Why not? Because the standard in the fourth circuit, when you can rely upon intrinsic evidence that when you can bring forth extrinsic evidence that was materially relied upon in the complaint, one of the case laws that we actually quoted said the purpose for that is anybody can allege fraud. I can allege fraud against you today, but if you have a document that proves you didn't commit fraud, we can look at that at a level, at a 12B6 stage. But was Mr. Coon's statement under oath? No, it was an academic requirement. It was what he had said he would do in order to serve. That's for your school. That's in the pedagogy. But we're in a federal court now. We talk about evidence and the way we look at 12B6 cases. You're saying we have to assume that everything he said was correct? No, the only thing we have to assume right here today for the purposes of this hearing is what the district court assumed. And that was what was pled in the plaintiff's complaint was true and correct. Even taking that standard and saying, we're going to look at this in the light most favorable to the plaintiff. When we will assume the statements in her complaint to be true and correct, it does not rise to the level of defamation under the law. What about assuming everything in the statement is false? It wasn't provably false is the standard that the district court set. If it was a Rule 56 motion, that would be totally different, but when you're talking about 12B6, you're saying we have to assume everything he said about her is true? It was opinion. It was what? Opinion. That's what the lower court said and that's what the standard says. I apologize if I didn't spell that out earlier in my statements to you, Your Honor, but it's opinion. It's opinion. It's opinion. Then we move to the next level. Then you move on to the next level under the defamation. You still have to have publishing. It has to be published to someone. FERPA, we filed this motion, even though we thought it was beneficial to us, we still had to file this document under seal because Marshall is a state entity. FERPA applies to the university. No one at the university can go just disseminate miscursed records on any aspect of this case. They can't disseminate the Coons statement. They can't disseminate even the court taking as true her allegations that the defendant said certain things during this meeting, which we all have to adopt as true, saying that they were going to publish the statements to prospective employers when there was no expectation of work on the side. It was never published. It was confined to the university. It was just threatened. According to the complaint, yes. Right. That's true. You threatened her with that. In other words, you made an aspect of her appeal rights, whatever that was, that this is what the effect is. We're going to burlesque this to everybody you apply to as a teacher. That's right. We have to assume that's correct. We have to assume that's correct. So you're saying that as a matter of law in 1286, that you can do that, you can intimidate someone with their appeal rights by saying, okay, you do it if you want, but everybody you want to try to work with are going to know about all these things that Coons said. Judge, what I'm saying is that we have to take the complaint on its face as it's pled, as it's pled by a lawyer who has fought to be recognized by a lawyer in this court. And when we do, look, in this case, wouldn't that be at least from this stage, 1286, an injustice? No. Because it wasn't properly pled. When the court goes through this complaint and puts the time in, which I know it will, as Judge Johnston and his staff did, and Magistrate Tinsley and his staff did, it sounds, I understand where the court is coming from, but when it is boiled down and each allegation is looked at in conjunction with her statement of facts, she still doesn't have a justiciable cause of action for any of the seven counts she alleged in this complaint. That is what the evidence will ultimately show the court. So, with respect to the due process argument, you're saying that it is consistent with the handbook to deny credit, the no credit grade is an appropriate determination under the teaching experience? Yeah, sure. I'll go two-fold. The handbook specifically states that any candidate cannot be found to fall below the proficiency of basic on the report. That was my question. And it's two-fold. And there is an attendance requirement. Right. The three. But connect for me, please, the student teaching experience and the basic requirement. It is the opinion of the educator to whom the student is placed with. In other words, defendant Kuhn. That the student, that a satisfactory completion of the student teaching experience is a basic requirement? Yes. And is that decision individual? Is it a student by student determination? Yes. Yes. And it's two-fold. And I know I'm going to run out of time. I'll ask permission just to finish my answer to Judge Duncan's question. It is two-fold, Judge. There is an individual assessment form that you are supposed to review, and this is according to the handbook. There's an individual assessment form that midway through the term, the supervising teacher and the candidate are supposed to go over and address at that time and says, this is what I think you're doing real good at. This is what I think you probably need to work on a little bit the last half of your term. And then at the end of the term, the teacher, supervisory teacher, fills out and writes opinions on that document. That is level one for that assessment. There is also a university supervisor. In this case, it was Miss Souther, defendant Souther. She also has to do an assessment because she meets with Kuhn, the supervising teacher, and she meets with Miss Kerr, the student, and talks about issues, and she's a liaison between the two. And she also files a paper that determined, and in this case, as it was stated, when she was there and she found out what went on, she incorporated and adopted the statements that were provided by Mr. Kuhn and agreed with his recommendation as to not to certify Miss Kerr for teaching. So she didn't do an assessment at all? She assessed the situation. She assessed the situation that the candidate left the class, voluntarily terminated her teaching experience without permission, without following a form requesting reassignment, self-declared I've met the requirements of my program and I'm not coming back, and then walked into a meeting on December 5 and was surprised to find out she got a negative evaluation for her character and her behavior. Any additional questions? Thank you, Your Honor. Her character and behavior, not her evaluation academically? Which that was the basis of the class. When we look at the form, that was an example in the MAT handbook, which is part of the record. It talks about professionalism and character as two of the boxes that you must identify where her proficiency falls. Did they ever assess what she said was the conditions which gave rise to her situation? Excuse me, Your Honor? Did they assess the conditions that she alleges with that teacher? The narrative does. No, did you give her a chance to assess that, assess what her position was? Yes. She is given a chance to assess that. She's given a chance to, when she identifies the problem as she identified, to follow the procedure and follow the form and announce her problem. She said that she was told for the first time, we've already decided you will not get credit. Exactly. There was no discussion with her before that? No. Why not? Because she said, I'm not coming back. She says in here, she says in her complaint, I've met the requirements in my degree. She self-professed that she met a requirement of a degree. Marshall University does not have to go out and track down every student that walks out of its program and say, now, are you sure you want to leave? You know, we may still have to issue you a degree. No. When you send a letter to your program supervisor and you say, I've met the requirements of my degree and I'm not coming back, and you terminate your student teaching experience eight days before the term ends, knowing you can only have three absences, and knowing that may reflect poorly upon an evaluation, she had a procedure in place as defined by the book how to handle this situation. And that was to file a form and to request reassignment, at which time Marshall would sit down with her and talk about the issue she's had. She didn't give Marshall that opportunity, and that's in the complaint. And that's what brought about this dismissal. And the eight days would necessarily create the three absences? I'm sorry. Correct. The student handbook said you were allowed three absences. Anything over three absences requires make-up days and says, and if it's enough, it may require you to come back and have to repeat the course because you've missed too much school. Thank you. Thank you. Was she offered the opportunity to make up after you told her that this was the result? Semester was over. This was December. Her student teaching assignment, by the time Thanksgiving break ended and the December 5 meeting occurred, she did not provide Marshall any time. She can come back tomorrow and enroll and finish this one class and be done with it. She didn't try to mitigate her damages. She didn't do anything except file a complaint and say, I should have been given a degree for not completing a class and not completing my student teaching assignment. That's what the crux of her case is. The district court was able to say and look at it and say, you have not stated a cause of action. That's why she's not stated a cause of action because the complaint tells you right in its four corners when you look at it and that's all we need to focus on. Of course, she said that wasn't the real reason. The real reason was that because of ... When did she give Marshall the opportunity to define the real reason? When did she follow the procedure that was set forth in her handbook and make part of the record saying that I've got a problem and here it is in writing, let's address it. No, she waited until the end of the semester when it was too late to do it. How many lines on a piece of paper would it take if that was the sole reason to say you left your post too early? She was showing a piece of paper with a whole lot of things on it, wasn't she? She didn't show it to her, it was just red things. And that, your honor, if we move past this, if this case gets sent back down on any issue and we move forward on discovery, this case gets better for the defendants. What I'm trying to limit my ... Shakespeare once said, thou protest too much. It looked like you're not prepared to get back there. What I am saying is we have limited this argument today, we have limited our briefing to what is contained within the complaint. We have not went on this factual rampage to bring in issues outside the pleadings. We have stuck to that and we have stuck to the MAT handbook that the court made part of the document. Can I give a hypothetical? Sure. You're saying, and this is not this case, it's a hypothetical, you know that. If a student, for example, was at an assignment and the person was made to have all kinds of, subjected to derogatory, anti-female suggestions of all kinds of sexual, all those kinds of things, and she said, listen, I'll finish my work here, I'm not going to take this anymore. You then could say, well, you left eight days early. She would have no case, right? Because you said the sole reason, the only reason you left eight days too early, you were absent. Wouldn't we have to look at it, at 12B6 stage I'm talking about, to look at what she says is the real reason why this happened. Not because of the absence, it's because of the conditions that she says, she alleges, that she had to deal with, what her complaints were in terms of the students, the grade inflation, all of those things, those situations. And then you said, no, no, you just left early. That's right. So that would be end of story at 12B6. If it was properly pled, it would survive a 12B6 stage. That is what this case centers upon, is that the allegations were not properly pled, and the court did its job in finding this case was right for disposal under the 12B stage. So that situation that you've called forth, either we follow procedure or we don't. That's what this court's going to determine. Was the procedure flawed that we followed, or was it correct? That's what is going to be the determination out of this hearing today. And in that case, the situation would be, would procedure be followed properly? If that person in the hypothetical, that female, could set forth a justiciable cause of action that could survive the 12B6 stage, it should survive the 12B6 stage. What we have argued in this case is that this complaint did not survive 12B6 as written. And that is what Magistrate Tinsley agreed with, and that's what Judge Johnston agreed with. That's where we stand. But what you're missing in that is that, in the hypothetical, as in this case, ultimately to get to fairness in the case, you would have to be able to get into the correctness of the relationship and the reason for the poor evaluation. Your case would be stronger if the person was supposed to give an independent assessment and therefore you could say independently. But you said she didn't. She looked at your own words today, looked at what he said, and said, well, I don't need to give an assessment. I'm adopting, I think you used the word, I'm adopting what he said. Until we can look into that from a standpoint of whether to test the factual aspect of it, how could you ever get justice? Because you would say, well, you can't go into all these hostile harassment and those kind of thing environment because we looked at it. All we're looking at is, like you said, you walked away from the job. That's why I looked before. You told me that they needed to look at the statement and assume that it was true. I said we can't assume that it's true at this stage. But you think we can assume that everything that Kuhn said is true. I think we can. Magistrate Tinsley thought we could. Judge Johnston thinks we could. And if 12b-6... And that was the Fourth Circuit's question. And now it's the Fourth Circuit's determination.  Yes, ma'am. Because maybe I misunderstood you. Yes, ma'am. Because I had a question about that as well. I'm sorry to take... Sure. But I thought you were saying, not that it's true, but whether or not it's opinion. Is it whether it's true? For the purpose of this, it's alleged on a defamation... We went on an aside here. Talking about the complaint and the defamation count, where that issue arises, that is where what I'm reciting to you is the standard that the district court found in denying that cause of action. I believe that Judge Gregory and I went off on a couple of tangents there on the hypotheticals and other issues. But looking at solely the defamation... I wouldn't describe any question I gave you as a tangent, counsel. Counsel, will you look at me? Oh, I'm sorry, Your Honor. I wouldn't describe any question I asked you as a tangent. Okay. I apologize for the mischaracterization, Your Honor. All right. So what we're talking about is in terms of the constitutional claim. You keep going back into the state claim of defamation. You do say, for that purpose, that you do look at it, assume that what he says is true, because you didn't even make the assessment independent. Ms. Southern, you said her name was? Southern. Southern. That's what counsel says. You didn't do your process, because rather than doing it independently, you said, oh, after seeing his statement, I'm going to adopt that, and you get no credit. You said it well yourself in your own words, and that's the crux of the case. You are assuming that what he said is true, because just like in the hypothetical, until you get into that, the woman who has subjected to all kinds of harassment will never be able to get in there, because you said, well, we don't get into it. We assume that's true, and we evaluate it, because we accept that it was all true, and that's what you did. You told her you get no credit, and she walked into the room and wouldn't even let her look at the paper, wouldn't give her an assessment, because you have not told us that what counsel said in the beginning was not one word was false when she said it, and she laid out the facts. I stuck to the four corners of the complaint as the court did, Your Honor. And you agree with everything she said that happened, right? I agree she said stuff that was beyond the complaint. The statements that she made during her argument today that fall within the four corners of this document, we are under a requirement by the law to assume those facts to be true at a 12B6 stage. And don't we have to assume that everything you relied upon to assess no credit was false? No. Don't we have to assume that? No. We don't? We don't. Isn't that the Kuhn statement? And why? Isn't that the Kuhn statement? Because you said you made no independent assessment. You adopted his. That's what you're telling us. So therefore, your whole assessment is based upon something. At this point, the constitutional question is we have to assume it's false. No. What I assume is what she put in her complaint and what is proven. And that is she terminated voluntarily her experience in the program before she was permitted to. That resulted in a negative statement. And she put that in her complaint. She says right in her complaint, Your Honor, that until the day of the 19th when she left, prior to the events at issue, Defendant Kuhn also spoke highly of Ms. Kerr's work and collaboration to Ms. Kerr and to Defendant Sutton. We assume that is true as well. You know why we assume that is true? Because one, it's in the complaint. And two, it is true. That's why she said the whole thing wasn't about grades at all. It was all about homophobic views about her sexual orientation. That's an allegation. She said that. And the person who gave her the negative comment, all the stuff we're talking about here today, she makes no allegation that he knew of her sexual preference. Not in the terms of the, when you look at the counts in the complaint, when you look at her claims for relief, as set forth, she puts each defendant that she is claiming relief against. And they do not list Mr. Kuhn. They list the individual martial defendants. Thank you, Counsel. Thank you, Your Honor. I appreciate it. I think I should hire Mr. Boward as my counsel. Unfortunately, he has a conflict of interest, but he really couldn't have done a better job. I couldn't have done a better job myself of showing how the wrong standard has been applied here and how the state continues to urge that the wrong standard be applied. You will not find anything about missing eight days of class in the Kuhn statement. It is not in there. That is a litigation manufactured pretext. It's not in the handbook? You will not find anything. Okay, what I'm talking about is you will not find anything in any of the evaluations that were made prior to litigation. The evaluations that were held up is the reason why we will not give Ms. Kerr a degree. We will not give Ms. Kerr a teaching certificate. You will not find, oh, she missed eight days of class in there. You will find allegations that she committed a federal crime. You will find allegations that she had 14 separate areas of incompetency that were never previously mentioned. And these things have already been spilled by the defendants. They have already been publicized because the Kuhn statement, as you will find from the materials that were relied on by defendants, was a public published document. It was published in Marshall's Career Center records as soon as it was adopted by Marshall. And they said that Ms. Kerr was uniquely unsuited to be a teacher. There was nothing about Ms. Kerr missing eight days of class she can come back and make up the class. I also want to make the point that the chronology that's stated in the complaint states that Ms. Kerr made a complaint about Mr. Kuhn's conduct and she reached out to her supervisors at Marshall. And she reached out for help with that but she also said, again, because the Thanksgiving holidays were approaching, I understand that I've completed my requirements and that was basically a concession to them if you do not want to hold a meeting right now, if you just want to give me my degree and put an end to it, that's fine. I'm not going to make you do that. Ms. Kerr reaches out with an email about Mr. Kuhn's problematic conduct on November 19th. The defendants respond with total silence. They then schedule a meeting on December 6th, which is a few days before Plaintiff is supposed to receive her degree and her credential and in fact her degree is already in the mail because it arrives the next day. They schedule a meeting which given the time frame and given the fact that they did not follow up, there are so many things they could have done. If this were about eight days of class, the Kuhn statement would say eight days of class. It would not say that Plaintiff is the worst person on earth, which is basically what it says. It would not say that she's incompetent in 14 different ways. A person who has just been deemed conclusively incompetent in 14 different ways does not have this pretend opportunity to come back, take a class and get a credential from the same people that have just basically called her unfit to be a teacher. The eight days of class is a complete red herring.   Let me also point out that the defendants have presented, again, making my point, a completely false statement that Plaintiff is the worst person on earth. This is a completely different narrative than what is in the complaint. The complaint alleges and the complaint's allegations have to be accepted as true that the defendants did not simply give the Plaintiff an academic grade. They made what amounts to an academic censure, a disciplinary censure against her. It was a published document. It was comprehensive in terms of its coverage of the program that she was supposed to be completing. They finalized that document. They made it permanent. It was not a grade where the professor scrawls on your paper and then the paper goes away but just the A, B and C stays on your record. All of the language that was part of that censure, part of that condemnation which is very, very detailed and has nothing to do with missing eight days of class is in Plaintiff's permanent record regardless of whether she ever goes to Marshall again. It is in Plaintiff's public record. It will be viewed by anybody who ever considers Plaintiff for a teaching job and in fact Plaintiff walks around with it over her head every day. She no longer has a professional reputation because Marshall has told her that she can't have a teaching degree. How do you think that affects a person who might consider going back to practicing law? This is a document, a finding that has zero mention of missing class. That is a litigation created excuse. Your Honors, I just think that here if you apply the 12B6 standard and I frankly think that that Counsel Ballard is mistaken when he says that you have to keep deferring and you have to keep looking at what the District Court of Debt this is a de novo review. The court looks at the complaint and when it looks at the complaint it doesn't look at the complaint which is a complaint that is founded on saying that this intrinsic relied on document is false. It does not presume that that document that the complaint states is false is true. The defendant is taking us around in circles here and it keeps going around in this circle. If you have a complaint now the defamation is the central conduct and a defamation claim, a defamation case centers on factual findings that take place at the end of litigation not the beginning about is the defamation true or is the defamation false. We have civil rights here claims here we have due process claims but the conduct by which the deprivation of equal protection was carried out the conduct by which the deprivation of due process was carried out was that defamatory Coon statement and we simply cannot presume at a 12 v 6 stage that when the plaintiff comes in and says this is a false defamatory statement we do not presume that that statement is true when we evaluate the validity of her complaint that is what happens in a defamation action that is what happens in defamation litigation that is what the discovery in a defamation case is all about that's turning the whole thing backwards and when the counsel relies on Huck he's basically saying that we do backwards what the court did in Huck the West Virginia Supreme Court made a post trial determination that defendant Huck who was who was basically found he was in a somewhat similar case to plaintiff but the allegations against defendant Huck were proved at trial and the court held that since those allegations were proved at trial Huck didn't have a case we are not post trial here we are simply walking in with a complaint and the court I think did a very good job of assessing that that we cannot reverse that situation and presume that the plaintiff has no case you can read you can read the allegations in the complaint and you can take them and salt them in with these additional judicial I mean post post court excuses that the defendants have come up with and you could take any complaint and you could add the defendant spin to that complaint and you could dismiss that complaint I guarantee you that if the standard Mr. Ballard was urging is the standard that really applied on 12b6 the court would have a lot less to do because we would not be proceeding with litigation in very many cases it's the opposite standard the court applies every presumption in favor of the complaint the district court should have done that they made a mistake they tossed this case in the habeas pile so they did the wrong thing but all you have to do is take your de novo look right back at the complaint and if the complaint is read with the presumption in favor of the plaintiff as it is supposed to be read at this stage the court I think can do nothing else besides reinstate the claims thank you counsel thank you your honor and I do appreciate also very much the privilege of being here it's my first time before the fourth circuit alright we're going to ask the clerk to dismiss the court and then we'll come down and greet counsel this honorable court stands adjourned until tomorrow morning Godspeed United States and this honorable court
judges: Roger L. Gregory, Allyson K. Duncan, Richard L. Voorhees